**EXPRESS, INC., et al., Plaintiffs,**

v.

**SEARS, ROEBUCK & CO., et al., Defendants.**

No. C2–92–22.

United States District Court, S.D. Ohio, E.D.

Aug. 12, 1993.

504

Russell Allen Kelm, Richard A. Frye, Schwartz, Kelm, Warren & Rubenstein, Columbus, OH, Frank J. Colucci, Colucci & Umans, New York, NY, for Express, Inc., Expressco Inc. and Limco Investments Inc.

Lawrence David Walker, Taft, Stettinius & Hollister, Columbus, OH, William Hanson, Nims, Howes & Collison, New York City, for Sears Roebuck & Co.

Lynda Eileen Roesch, Dinsmore & Shohl, Cincinnati, OH, Michael Karl Yarbrough, Frost & Jacobs, Columbus, OH, Eugene C. Moscovitch, Becker, Schoenfield & Wennergren, Oxnard, CA, Michael Alan Colton, Becker, Schoenfield & Wennergren, Los Angeles, CA, for Bugle Boy Industries, Inc.

## MEMORANDUM AND ORDER

### Background

BECKWITH, District Judge.

This matter is currently before the Court to consider the two summary judgment motions which have recently been filed by the Defendants in this action. The Plaintiffs in this action are Express, Inc. ("Express"), Expressco, Inc. ("Expressco"), and Limco Investments, Inc. ("Limco"). The Plaintiffs are all subsidiaries of The Limited, Inc. ("Limited"). The Plaintiffs have 647 **EXPRESS** stores in the United States with a total of 3,470,000 square feet of selling space. Express owns and operates retail clothing outlets that target females between the ages of 18 to 35. In both their stores and their advertising, the Express stores seek to present a trendy, French, fashionable image. On January 13, 1992, the Plaintiffs brought this action against Sears, Roebuck and Co. ("Sears") and Bugle Boy Industries, Inc. ("Bugle Boy").

The Plaintiffs allege that Sears' utilization of **LEG EXPRESS** for women's socks and hosiery, and Bugle Boy's utilization of the mark **BB EXPRESS** on boys' and men's apparel infringed their various trademarks. Bugle Boy is a manufacturer and distributor of men's and boy's clothing. Sears is a large and well known retail department store in the United States with over 800 retail stores.

In their complaint, the Plaintiffs assert claims against the Defendants for federal trademark infringement and unfair competition under 15 U.S.C. § 1114(1) and § 1125(a) and pendent state law claims under the Ohio common law of trademark infringement and unfair competition, and under § 4165.02 of the Ohio Deceptive Trade Practices Act. Additionally, both of the Defendants have filed counterclaims which seek cancellation of the Plaintiffs' registration of the **EXPRESS** mark based upon Section 14 of the Lanham Act, 15 U.S.C. § 1064.

On April 23, 1993, Bugle Boy filed a motion for summary judgment, and on May 7, 1993, Sears filed a motion for summary judgment. Both of the Defendants assert that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a matter of law. Bugle Boy also seeks summary judgment on its counterclaim alleging "naked licensing."[1] The Plaintiffs have filed memoranda contra the summary judgment motions, and the Defendants have filed reply briefs in support of their motions.

### Standard of Review

■ Rule 56(c) of the Federal Rules of Civil Procedure provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The purpose of a summary judgment motion is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978).

In 1986, the United States Supreme Court issued three decisions which gave new life to Rule 56 as a mechanism for weeding out certain claims at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is well recognized that these cases brought about a "new era" in summary judgment practice. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989). The three opinions by the Supreme Court reflect a return to the original purpose of the summary judgment motion. *Id.*

■ Accordingly, the summary judgment "standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Moreover, when a party cannot establish the existence of an element essential to that party's case on which the party will have the burden of proof at trial, the Court must enter summary judgment against that party, pursuant to Rule 56. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Thus, in order to survive a motion for summary judgment,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*"

*Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (emphasis in the original) (footnote and citations omitted).

Rule 56(e) of the Federal Rules of Civil Procedure provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth

---

1. Although it has also asserted a counterclaim against the Plaintiffs, Sears has not moved for summary judgment on its counterclaim.

specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

Accordingly, mere allegations are not sufficient to defeat summary judgment. The Court can now apply this standard to the Defendants' motions for summary judgment.

### Likelihood of Confusion

In their motions for summary judgment, both of the Defendants assert that there is no likelihood of confusion between their marks and the Plaintiffs' mark. The Plaintiffs, however, assert that genuine issues of material fact exist concerning the likelihood of confusion.

■ Pursuant to 15 U.S.C. § 1125(a), in order to make out a trademark infringement claim, the claimant must establish the following elements:

(1) ownership of a specific service mark in connection with specific services [2];

(2) continuous use of the service mark;

(3) establishment of secondary meaning if the mark is descriptive; and

(4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services.

*Homeowners Group v. Home Marketing Specialists*, 931 F.2d 1100, 1105 (6th Cir. 1991).

In trademark infringement/unfair competition cases under the Lanham Act, the touchstone or ultimate issue is the issue of "a likelihood of confusion" between the trademarks. *Little Caesar Ent., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 570 (6th Cir.1987). In other words, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners*, 931 F.2d at 1107.

■ According to the Sixth Circuit Court of Appeals, the issue of whether there is a likelihood of confusion is considered to be a "mixed" question of fact and law. *Homeowners*, 931 F.2d at 1107. Thus, factual findings must be made regarding the factors designated as likelihood of confusion factors, including:

1. strength of the plaintiffs' mark;

2. relatedness of the goods;

3. similarity of the marks;

4. evidence of actual confusion;

5. marketing channels used;

6. likely degree of purchaser care and sophistication;

7. intent of the defendant in selecting the mark;

8. likelihood of expansion of the product lines.

*Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). As the Sixth Circuit noted in *Homeowners*, such factors serve as a guide for a court in addressing the question of whether confusion is likely to result from the concurrent use of the marks. 931 F.2d at 1107. These factors are interrelated as each case presents its own unique set of circumstances and some factors may not be particularly helpful in a certain case. *Id.*

---

2. The disputed Sears mark is LEG EXPRESS which is used by Sears solely on socks. The Plaintiffs contend that they own the following four federal registrations:

| | |
|---|---|
| **EXPRESS** | Reg. No. 1,120,073 |
| **LIMITED EXPRESS** | Reg. No. 1,193,778 |
| **LIMITED EXPRESS** | Reg. No. 1,205,525 |
| **EXP and design** | Reg. No. 1,539,267 |

Registration No. 1,120,073 register the **EXPRESS** mark for sweaters, knit tops, blouses, pants, sports jackets, shirts, and skirts. Registration No. 1,120,073, the Plaintiffs' registration for the term **EXPRESS** alone, does not specifically include "socks." Sears thus argues that the Plaintiffs can not claim a statutory presumption for its **EXPRESS** mark against the use of LEG EXPRESS on women's socks by Sears, relying on *Western Pub. Co., Inc. v. Rose Art Industries, Inc.*, 910 F.2d 57, 60 n. 1 (2d Cir.1990). The Plaintiffs have not responded to this argument of Sears. Therefore, it appears to the Court that the Plaintiffs' claim against Sears is limited to whether the Plaintiffs' *unregistered* mark is entitled to protection under Section 43(a) of the Lanham Act.

The resolution of whether a given set of facts establishes a likelihood of confusion is a legal conclusion and thus, a grant of summary judgment may be appropriate in certain cases under the Lanham Act. *See, Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir.1988); *Little Caesar,* 834 F.2d at 570. The Plaintiffs contend that there are genuine issues of material fact that preclude summary judgment in this case, and the Defendants contend that there are no genuine issues of material fact with respect to the factors outlined in *Frisch's* which preclude summary judgment.

The first *Frisch's* factor, the strength of the mark alludes to the mark's distinctiveness, or its tendency to identify goods sold under the mark with a particular source because of: (1) the intrinsic nature of the designation, and (2) the context in which it is used. Restatement of the Law of Unfair Competition, Tentative Draft No. 2, § 13 (March 23, 1990). Sears and Bugle Boy contend that the Plaintiffs' **EXPRESS** mark has lost its significance as a single source because of the extensive third party usage of the term "Express." The Defendants argue that courts have held that extensive third party usage can weaken a mark, relying upon *Elizabeth Taylor Cosmetics v. Annick Goutal,* 673 F.Supp. 1238 (S.D.N.Y.1987); and *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.,* 680 F.2d 755 (CCPA 1982).

The Plaintiffs have presented the Court with substantial evidence regarding the strength of the **EXPRESS** mark. The Court agrees with the Plaintiffs that the **EXPRESS** mark appears to occupy a significant presence in the retail marketplace. In view of the analysis offered by the Plaintiffs, the Court finds that a genuine issue of material fact exists regarding the strength of the **EXPRESS** mark.

The second *Frisch's* factor, relatedness of the goods, refers to the proximity of the products in the marketplace. Sears argues that its socks are a commodity sock, not a designer item like the Plaintiffs' socks which are allegedly a fashion accessory. The Plaintiffs, however, assert that both types of socks perform the same function, whether characterized as fashion forward or as a commodity. The Plaintiffs thus contend that there is a greater likelihood of confusion when products perform the same general function. Restatement § 21, Reporters' Notes, comment j, citing *Wynn Oil Co. v. Thomas,* 839 F.2d 1183 (6th Cir.1988).

Bugle Boy argues that their goods are not related to the goods sold by the Plaintiffs because it sells only men's and boy's clothing. Apparently, Bugle Boy has applied to the United States Patent & Trademark Office to register **BB EXPRESS** as a trademark for jeans and pants. Bugle Boy's application is not limited to men's clothing. The Plaintiffs contend that the **EXPRESS** mark has been used on a variety of products, including men's clothing, and that the **EXPRESS** mark is not limited to women's clothing.

The Court agrees with the Plaintiffs that an owner of a mark is qualified for protection against the unauthorized use of its mark not only on the particular products which it retails, but also on closely related products that a consumer could reasonably believe are manufactured or sponsored by the owner of the trademark. *See, Yale Electric Corp. v. Robertson,* 26 F.2d 972, 974 (2d Cir.1928). The Court thus finds that the Defendants have failed to show an absence of a genuine issue of material fact regarding the relatedness of the goods that are sold by the parties.

The third *Frisch's* factor, the similarity of the marks, considers the similarities of the marks as entities, and the similarities of the marks weigh more heavily in this consideration than the differences of the marks. *See, AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979). In view of the analysis provided by the Plaintiffs, the Court finds that the Defendants have not established an absence of a genuine issue of material fact on this issue.

The fourth *Frisch's* factor is the evidence of actual confusion. First, the Court notes that an owner of a trademark does not need to prove that actual confusion existed or exists to establish likelihood of confusion. *See, Eclipse Associates Ltd. v. Data General Corp.,* 894 F.2d 1114, 1118 (9th

Cir.1990); *Harold F. Ritchie v. Chesebrough–Pond's, Inc.,* 281 F.2d 755, 761 (2d Cir.1960). Additionally, the Court recognizes that a finding of actual confusion in the marketplace would be highly relevant to a finding of a likelihood of confusion. *A.T. Cross Company v. TPM Distributing, Inc.,* 226 U.S.P.Q. 521, 523–4, 1985 WL 72660 (D.C.Minn.1985).

■ Both the Plaintiffs and Bugle Boy have commissioned surveys dealing with actual confusion of the parties' products. A survey commissioned by the Plaintiffs concluded that 31% of clothing purchasers believe the company which puts out **EXPRESS** socks is the same as, or associated with the company which puts out LEG EXPRESS socks and 50% of such purchasers believe the company which puts out **EXPRESS** shirts is the same as, or associated with, the company which puts out BB EXPRESS shirts. Sears, however, argues that the Plaintiffs' survey is flawed. A survey commissioned by Bugle Boy found that there was no actual likelihood of confusion between BB EXPRESS and **EXPRESS**. The Plaintiffs, however, argue that the Bugle Boy survey is flawed and should not be should not be considered by the Court.

Sears asserts that the Court should disregard the Plaintiffs' survey because it made use of a side-by-side comparison of the Plaintiffs' socks and Sears' socks, relying upon *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., et al.,* 828 F.2d 1482, 1487–88 (10th Cir.1987). Bugle Boy also asserts that the Plaintiffs' survey is flawed and should not be used by the Court, relying upon *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1187 (6th Cir.1988); and *Elizabeth Taylor Cosmetics v. Annick Goutal,* 673 F.Supp. 1238, 1248 (S.D.N.Y.1987). The Plaintiffs, however, argue that surveys such as the Plaintiffs' are utilized by the courts as evidence of likelihood of confusion, relying upon *A.T. Cross Company v. TPM Distributing, Inc.,* 226 U.S.P.Q. 521, 523–4, 1985 WL 72660 (D.C.Minn.1985). The Court notes that Sears has recently filed a motion in limine to exclude the Plaintiffs' market research evidence. At this stage of the proceedings, the Court will not rule upon the evidentiary value of either the Plaintiffs' survey or Bugle Boy's survey. In view of the preceding and in view of the analysis offered by the Plaintiffs, the Court finds that a genuine issue of material fact exists regarding the fourth factor of evidence of actual confusion.

■ The fifth *Frisch's* factor, the marketing channels used, considers how and to whom the respective goods of the parties are sold. *Homeowners,* 931 F.2d at 1110. Sears argues that the general target markets for the Express socks and the Sears socks are quite different. Bugle Boy argues that the Plaintiffs' **EXPRESS** mark is used exclusively in its stores and solely on women's apparel and accessories, while Bugle Boy's **BB EXPRESS** mark is used only on men and boy's clothing which is never sold alongside the Plaintiffs' product. Although the Plaintiffs previously used the **EXPRESS** mark on men's apparel, they no longer use the **EXPRESS** mark for men's apparel. In 1990, the **EXPRESS** Men stores were reformatted into separate stores called "Structure."

Regardless, the Plaintiffs still argue that the normal marketing methods and channels of distribution of the parties are similar. The Plaintiffs also argue that Sears and Bugle Boy sell their products in price ranges that overlap with the prices for **EXPRESS** products. For purposes of the summary judgment motions, the Court finds that the Defendants have not demonstrated that the respective purchasers do not overlap or that the respective purchasers are distinguishable.

■ .The sixth *Frisch's* factor considers the likely degree of purchaser care and sophistication. Sears asserts that its the purchasers of its socks' are aware of its guarantee of consumer satisfaction while the Plaintiffs' customers are selecting socks as a more expensive fashion accessory. Thus, Sears contends that socks are purchased on either a staple or fashion basis. The Plaintiffs, however, argue that its socks are comparable to those of Sears, since its socks are sold at prices ranging from $2.00 to $4.00 and that Sears' socks are sold at prices as low as $1.00 per pair. The Plaintiffs, thus, contend that purchasers of items, such as socks that are

sold at such inexpensive prices, are not likely to exercise more than casual care in their selection and purchase of socks.

Moreover, the Plaintiffs contend that the BB EXPRESS shirts are sold at the same price points as shirts sold at **EXPRESS** stores. Also, the Plaintiffs contend that such goods are often purchased by customers on impulse. The Court finds that the Plaintiffs have established a genuine issue of material fact on this factor.

 The seventh *Frisch's* factor looks to the intent of the Defendants in developing their marks. The Defendants both assert that there is no evidence of bad intent on the part of the Defendants in the development of their marks. However, the Plaintiffs contend that their trademark registrations constitute constructive notice to the Defendants of the Plaintiffs' ownership of the **EXPRESS** mark, relying upon 15 U.S.C. § 1052. Additionally, the Plaintiffs assert that good faith is not an absolute defense to an infringement action, relying upon *Florence Mfg. Co. v. J.C. Dowd & Co.*, 178 F. 73, 75 (2d Cir.1910). Accordingly, the Court finds that the Defendants have not established the absence of a genuine issue of material fact on this factor.

The eighth *Frisch's* factor refers to the likelihood of expansion of product lines. Sears contends that this factor is not appropriate here since both of the parties sell women's socks. The Plaintiffs also contend that this factor is not significant in this case since the marks and products are allegedly similar and the marketing channels overlap.

The Court finds that the Defendants have not demonstrated that the absence of genuine issues of material fact regarding the *Frisch* factors. Thus, in view of the preceding and in view of the analysis provided by the Plaintiffs in their memorandum, the Court finds that summary judgment is not appropriate with respect to the likelihood of confusion in this matter.

### Abandonment

Additionally, in their motions for summary judgment, the Defendants both argue that the Plaintiffs have abandoned any rights in the **EXPRESS** mark through the Plaintiffs'

uncontrolled or "naked" licensing, and thus, the Defendants assert that the Plaintiffs can not establish that the Plaintiffs have an exclusive right to the use of the term **EXPRESS** on the disputed products. Specifically, the Defendants contend that the Plaintiffs have engaged in a pattern of conduct that constitutes an abandonment of their rights in the **EXPRESS** mark. The Plaintiffs, however, argue that they have not abandoned the **EXPRESS** mark or engaged in uncontrolled or "naked" licensing of the **EXPRESS** mark.

Section 45 of the Lanham Act, 15 U.S.C. § 1127, provides, in pertinent part:

A mark shall be deemed to be "abandoned" when either of the following occurs:

. . .

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

 Pursuant to the Lanham Act, the licensor of a registered trademark has an "affirmative duty" to take reasonable measures to detect and prevent misleading uses of the mark by licensees or the federal registration of the licensor may be cancelled. *See, Accurate Merchandising, Inc. v. American Pacific,* 186 U.S.P.Q. 197 (S.D.N.Y.1975); and *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.1959). The Defendants assert that the Plaintiffs have treated the **EXPRESS** mark carelessly which is allegedly demonstrated by the Plaintiffs entering into the uncontrolled license agreements with third parties.

Formerly, the May Department Stores Company ("May") was the owner of the registered mark **EXPRESS** (Reg. No. 1,120,073) for apparel, not including socks. In 1987, the Limited brought a declaratory judgment against May in which the Limited asserted that the Limited's use of "Express" within its own stores was not likely to cause confusion with the **EXPRESS** mark owned by May.

Eventually, the Limited and May settled this action, and entered into a license agreement in which May assigned the **EXPRESS** registration to Expressco, Inc. Under the agreement, May was allowed to continue to utilize the term, "Express."

On December 7, 1990, Expressco granted a second license to The Orit Corporation ("Orit") which does business as *Gitano*. Under this license, Orit was granted the rights to use "Express" on all of the goods identified in the mark's registration, and on a list of other items. The Defendants thus assert that the Plaintiffs have carelessly treated their EXPRESS marks through entering into the uncontrolled license agreements with both May and Orit.

■ The necessity for vigilance by the licensor was recently emphasized by the drafters of the Restatement (Third) of Unfair Competition:

An uncontrolled or "naked" license authorizes use of the trademark on goods or services for which the trademark owner cannot offer a meaningful assurance of quality. When the owner of a trademark fails to exercise reasonable control over the use of its mark by a licensee, the presence of the designation on the licensee's goods or services misrepresents their connection with the trademark owner. The designation thus ceases to identify goods and services associated with the owner of the mark. Although prospective purchasers may continue to perceive the designation as a trademark, courts have traditionally treated a destruction of the designation's capacity for accurate identification resulting from uncontrolled licensing as a loss of trademark significance, thus subjecting the owner of the mark to the risk of abandonment. . . .

Restatement (Third) § 33, comment b. Additionally, the Court notes that the licensor's lack of any intent to abandon the mark is not a defense against naked licensing activities. *Yocum v. Covington*, 216 U.S.P.Q. 210, 216 (TTAB, 1982).

The Plaintiffs assert that they have not engaged in naked licensing of the **EXPRESS** mark. The Plaintiffs also assert that they have monitored and do monitor the actions of the two licensees, May and Orit. The Plaintiffs' License Agreements with May and Orit contain quality control provisions regarding the licensees' usage of the mark. The License Agreements provide, in pertinent part:

Licensee shall exercise quality controls and maintain standards of quality with respect to the Goods manufactured or sold under the Mark at least equivalent to the quality of the Goods which Licensee has manufactured or sold under the mark prior to the date of this Agreement. Licensee shall assume responsibility for monitoring and maintaining such quality standards subject to reasonable verification by Licensor.

The Plaintiffs contend that their contracts with May and Gitano do not constitute abandonment through naked licensing of the **EXPRESS** mark. The Plaintiffs also contend that they are now investigating certain uses of the Plaintiffs' **EXPRESS** mark by the Plaintiffs' licensees that the Plaintiffs were unaware of prior to the discovery in this lawsuit. In view of the preceding and in view of the analysis provided by the Plaintiffs, the Court finds that there is a genuine issue of material fact regarding whether the Plaintiffs have abandoned the **EXPRESS** mark through naked licensing.

Additionally, the Defendants contend that the usage by third parties of marks containing the word "Express" indicates that the Plaintiffs have abandoned their mark and indicates that the Plaintiffs' mark is a weak mark. The Plaintiffs, however, contend that third party marks are irrelevant to the issue of abandonment and that the Defendants have not proven that such third party marks have weakened the Plaintiffs' mark. The Plaintiffs contend that **EXPRESS'** employees report to **EXPRESS** management any instances in the marketplace which they perceive to be an infringement of the **EXPRESS** mark. The Plaintiffs have presented the Court with affidavits which detail the various methods that the Plaintiffs use in detecting any occurrences in the retail marketplace which might be an infringement of the **EXPRESS** mark. In view of the preceding and in view of the analysis by the Plain-

tiffs in their memorandum, the Court finds that a genuine issue of material fact exists regarding whether the Plaintiffs have abandoned their mark through third party usage.

### Conclusion

In view of the preceding, the Court hereby **DENIES** the motion for summary judgment by Defendant, Bugle Boy Industries, Inc., and the Court hereby **DENIES** the motion for summary judgment by Defendant, Sears, Roebuck & Co.

**IT IS SO ORDERED.**