**MALIBU, INC., Plaintiff,**

v.

**Albert L. REASONOVER, Defendant.**

No. 3:00–CV–641 RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 19, 2003.

Ryan M. Fountain, Mishawaka, IN, for plaintiff/third-party defendant/counter-defendant/counter-claimant/third-party plaintiff.

Don G Blackmond, Doran Blackmond LLP, South Bend, IN, James D. Hall, Botkin and Hall LLP, South Bend, IN, for defendant.

M. Robert Benson, Benson Pantello Morris James & Logan, Fort Wayne, IN, for defendant/third-party plaintiff/counter-claimant/counter-defendant.

John D. Ulmer, Yoder Ainlay Ulmer and Buckingham, Goshen, IN, James F. Groves and James P. Ehrhard, Hardig Lee and Groves, South Bend, IN, James P. Ehrhard, Patrick S. Ryan, Bristol, IN, Mattias Wilhelm, Goshen, IN, for third-party defendant.

Don G. Blackmond, Doran Blackmond LLP, South Bend, IN, James D. Hall, Botkin and Hall LLP, South Bend, IN, for counter-claimant.

## MEMORANDUM and ORDER

MILLER, Chief Judge.

Third-party defendants Steve Bennett, David Hoefer, Vitasun, Inc., Scott Strefling, Candice Strefling, and Malibu Properties, LLC have moved for summary judgment on Albert Reasonover's claim of trademark infringement as contained in Count VI of his Supplemental Amended Counterclaim and Third Party Complaint.

The third-party defendants[1] also ask that if their summary judgment motion is granted as to Mr. Reasonover's federal claim, the court exercise its discretion under 28 U.S.C. § 1367 and dismiss his remaining state law claims. Mr. Reasonover maintains that he has a viable trademark infringement claim, and the motions should be denied.

### BACKGROUND

The following facts are taken from the summary judgment record, and are viewed as favorably to Mr. Reasonover as is reasonable. In September 1992, Mr. Reasonover became associated with Kevin Rhoads, who provided the money needed to assist in opening the parties' tanning salon in the Concord Mall, Elkhart, Indiana. In connection with the opening of their business, Mr. Reasonover and Mr. Rhoads filed articles of incorporation with the Secretary of State of Indiana on September 15 for formation of their corporation, Malibu Tanning, Inc. Mr. Reasonover says an accountant told him that for tax purposes he should file the articles of incorporation form, but he and Mr. Rhoads considered themselves to be partners despite the implications of the incorporation. Mr. Reasonover oversaw the salon's day-to-day operations with the help of his fiancé—later his wife—Amy. The salon, known as "Malibu Tanning," used the artwork and logo that Mr. Reasonover had created and designed in May or June 1992.

Sometime in March 1993, Mr. Reasonover and his wife Amy purchased Mr. Rhoads' share of the business, making them the co-owners of Malibu Tanning, Inc. In 1994, Malibu Tanning Supplies, a wholesale business that sold tanning lotion, tanning beds, and other related products,

---

1. Third-party defendant, Mattias Wilhelm, has not moved for summary judgment, and, therefore, is not included in any reference to the "third-party defendants" in this order.

was formed. Amy Reasonover ran that business from the parties' home. A year later, a second tanning salon was opened at Six Span Plaza in Elkhart, Indiana. According to Mr. Reasonover, he and Amy told customers and the public that he was the owner of the "Malibu Tanning" salons, and the couple worked together to make the businesses a success.

In May 1996, David Hoefer contacted Mr. Reasonover to discuss another salon Mr. Reasonover planned to open in Goshen, Indiana. Mr. Reasonover reports that Mr. Hoefer offered to lend him $400,000.00, on the condition that Mr. Reasonover repay the money when he could, without interest, and agree "to do the same thing for a similarly situated young person in the future." Mr. Reasonover accepted the offer, and Mr. Hoefer had his attorney prepare the paperwork for their new corporation. On July 18, 1996, Malibu, Inc. was formed. Mr. Hoefer received 51 shares of the company's stock, and Mr. Reasonover received 49 shares. Mr. Reasonover understood that Mr. Hoefer held the stock only as security for repayment of the interest free loan, and that he and Amy were to operate the salon. Discussions between the parties in 1998 resulted in Mr. Hoefer's attorney preparing documents that merged Malibu, Inc. and Malibu Tanning, Inc. into the single corporation: Malibu, Inc.

Mr. Reasonover became associated with Dennis McCormick, and, in July 1998, they, along with Mr. Hoefer, formed Malibu Tanning, Inc., a Michigan corporation, that did business as Malibu Tanning in Hillsdale, Michigan. Mr. Hoefer owned 60 percent of that corporation's stock, with Mr. Reasonover and Mr. McCormick each owning 20 percent. At that same time, Mr. Reasonover and Mr. Hoefer formed another corporation, Vitasun, Inc., to import Vitasun tanning equipment for resale.

Mr. Hoefer owned 51 percent and Mr. Reasonover 49 percent of that corporation. Soon after that, Steve Bennett became the parties' business partner by investing capital in Vitasun, Inc. and Malibu, Inc. Mr. Bennett received 16 shares of Vitasun stock and 8 shares of Malibu stock. Mr. Reasonover entered into another agreement in February 2000 with Scott Strefling and Mattias Wilhelm, in which they agreed to be partners in a tanning salon in Osceola, Indiana. That store was opened the next month.

Mr. Reasonover says that on April 13, 2000, Mr. Hoefer and Mr. Bennett told him that his positions with Malibu, Inc. and Vitasun, Inc. as president and director were ended, and he has had no participation in the businesses of Malibu, Inc. or Vitasun, Inc. since then. Mr. Reasonover then sold his interest in the Osceola salon to Mr. Strefling. Shortly thereafter, he and Amy formed A & A, Inc., with plans to open a tanning salon business. They advertised the salon as "Malibu Al's," and, prior to the opening, were contacted by counsel for Malibu, Inc. regarding infringement of the "Malibu Tanning" trademark. This lawsuit ensued, and Mr. Reasonover says that as a result, he has "delayed use of the trademark, but intend[s] to use it if and when this issue is resolved to [his] favor. [He] ha[s] never intended to abandon the use of the trademark." Reasonover Aff., ¶ 26. In August 2000, Mr. Reasonover registered the trademark "Malibu Tanning" with the Indiana Secretary of State.

Malibu, Inc. filed its trademark infringement against Mr. Reasonover, and Mr. Reasonover filed a counterclaim against Malibu, Inc. and a third-party complaint against Steve Bennett, David Hoefer, Vitasun, Inc., Scott Strefling, Candice Strefling, and Malibu Properties, LLC. Mr. Reasonover's claims include breach of con-

tract (Count I), breach of fiduciary duty (Counts II and III), trademark infringement (Count IV), and conversion (Count V). The third-party defendants have moved for summary judgment on Mr. Reasonover's trademark infringement claim, and have asked that if summary judgment is entered in their favor, Mr. Reasonover's remaining state law claims be dismissed.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted where there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." However, neither presenting a scintilla of evidence nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment. The party must supply evidence sufficient to allow a jury to render a verdict in his favor. *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1087–88 (7th Cir.2000).

## DISCUSSION

Mr. Reasonover claims that the third-party defendants have infringed upon his federal and state trademark rights in their use of the mark "Malibu Tanning," and have injured him by misappropriation of that mark. Mr. Reasonover's action is based on Section 43(a) of the Lanham Act, which creates a civil cause of action for trademark infringement against any person who uses in commerce "any word, term, name, symbol, or device" or "any false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). Federal registration of a mark is not a prerequisite to an action under Section 43(a). *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 776, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring) ("[T]he Court interprets [section 43(a) ] as having created a federal cause of action for infringement of an unregistered trademark or trade dress and concludes that such a mark or dress should receive essentially the same protection as those that are registered."); *TMT North America, Inc. v. Magic Touch GmbH,* 124 F.3d 876, 881 (7th Cir.1997) ("Since the purpose of a trademark, whether federally registered or unregistered, is to designate the origin of goods, the infringement of such a trademark is actionable under section 43(a), provided the other requirements of the section are met.").

To prove a claim under Section 43(a), a plaintiff must establish that "(1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among customers." *CAE, Inc. v. Clean Air Engineering, Inc.,* 267 F.3d 660, 673–674 (7th Cir.2001). A false designation of origin claim under Section 43(a) requires that there be a true designation of origin or, in other words, a party with trademark rights in the mark. "In a § 43(a) cause, therefore, a preliminary question is always whether someone has used a word or sym-

bol to identify goods such that the word or symbol refers (at least in the eyes of the law) only to that person's goods." *TMT North America v. Magic Touch GmbH,* 124 F.3d 876, 882 (7th Cir.1997). The third-party defendants maintain that Mr. Reasonover can't succeed on his claim of trademark infringement—they say he has no ownership rights in the trademark or logo "Malibu Tanning" because he has never used the mark in commerce in his personal capacity, and their use of the mark creates no likelihood of confusion.

### (A) Ownership Rights in the Trademark

Mr. Reasonover claims he owns the trademark "Malibu Tanning." He says he designed and created the mark in May or June 1992, and that in September 1992, he and Kevin Rhoads formed a partnership to open "Malibu Tanning," a tanning salon in the Concord Mall. The design created by Mr. Reasonover was used as the company's logo and appeared on the company's sign. Mr. Reasonover maintains that he has ownership rights in the trademark because he "created it and was the first to use it." Reasonover Br., at 11. He also claims that use of the trademark by the tanning salon was via a license he issued to the business. Mr. Reasonover reports that he registered the "Malibu Tanning" logo with the Indiana Secretary of State on August 7, 2002.

■ Trademark law provides that ownership of a trademark is founded upon actual use of the mark, not the mere creation of it. Thus, "the party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427, 433–434 (7th Cir.1999); *see also* 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:4 (4th ed.1997) ("ownership

is governed by priority of use"). The Lanham Act defines "use in commerce" as "bona fide use of a mark in the ordinary course of trade," with the accompanying explanation that (1) a mark is used on "goods" when "it is placed in any manner on the goods or their containers or the displays associated therewith ... and the goods are sold or transported in commerce," and (2) a service mark is in use "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. "[I]n the absence of federal registration, prior ownership of a mark is only established as of the first actual use of a mark in a genuine commercial transaction." *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.,* 146 F.3d 350, 358 (6th Cir.1998); *see also Planet Hollywood (Region IV) v. Hollywood Casino,* 80 F.Supp.2d 815, 879 (N.D.Ill.1999) ("Thus, to gain protection under the Lanham Act, one must establish rights under the common law, which confers ownership on the person who employs the first actual use of a mark in a genuine commercial transaction. In short, one must win the race to the marketplace." (citations omitted)).

■ Mr. Reasonover says he and Mr. Rhoads formed a partnership, and that he "had no knowledge with respect to corporation organization matters," Reasonover Aff., ¶ 9, but the evidence shows that on September 15, 1992, he and Kevin Rhoads filed articles of incorporation with the Secretary of State for the formation of the corporation, Malibu Tanning, Inc. Mr. Reasonover testified about his understanding of the business:

Q You mentioned Malibu Tanning, Inc. When did you first become employed by them?

A First-time was September, 1992. Kevin Rhoades and myself opened that Malibu Tanning, Inc.

\* \* \* \* \* \*

Q Okay. And what kind of business does Malibu Tanning, Inc. run?

A Personal service.

Q What kind of service?

A Tanning.

Q Do they run tanning salons?

A Yes.

Q How many?

A What year? '92 when it first opened?

Q Yes.

A '92 we just had one.

\* \* \* \* \* \*

Q Did there come a point in time when you opened a third tanning salon with Malibu Tanning, Inc.?

A Only three businesses that we have with Malibu Tanning, Inc. was—two tanning salons. One in Concord, one at Six–Span, and one at Malibu Tanning Supplies....

Q Now did there come a point in time when you stopped being an employee of Malibu Tanning, Inc.?

A Probably when Malibu Tanning, Inc. merged with Malibu, Inc. I want to say in the—to the best of my knowledge maybe the fall of '98. Summer to fall. In that time.

Q Okay. Just so I have got this straight. You started work for Malibu, Inc. sometime in '96. And you were working for Malibu Tanning, Inc. until the merger. Right?

A I was working for both.

\* \* \* \* \* \*

Q Do you know who the shareholders of Malibu Tanning, Inc. were?

A Yes.

Q Who was that?

A At what time? When it first opened?

Q Yes.

A Or after the sale?

Q Start when you first opened.

A Kevin Rhoades. Myself.

Q Okay. Now you mentioned that you bought out Mr. Rhoades in '93?

A Yes. Him, Amy and I had an agreement in March and bought him out.

Q Okay. And after you bought him out who were the shareholders?

A Amy and I.

Deft. Memo., Exh. 3 (Reasonover Dep.), at 18–25. The tanning salon, while operated on a day-to-day basis by Mr. Reasonover, was part of the business of Malibu Tanning, Inc. Malibu Tanning, Inc. offered its goods and services to the public under the name "Malibu Tanning."

Mr. Reasonover hasn't claimed or submitted any evidence to support a finding that he personally used the mark "Malibu Tanning" on any goods or services before the use of the mark on the tanning salon's goods and services, so he cannot establish that he is owner of the mark. Malibu Tanning, Inc., the corporation, not Mr. Reasonover, the individual, was the first party to use the mark in commerce in connection with its sale of goods and services, entitling it to ownership of the mark. *See* Rudolf Callman, THE LAW OF UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 19.17 (4th ed.1981 and Louis Altman Fall 2002 Supp.) ("The owner of the business which first uses the trademark to refer to itself, and which is the repository of the goodwill which the mark symbolizes, is the owner of the mark. In this context, the owner of a business conducted by a corporation is the corporation; a trade-

mark used in the business of a corporation does not belong to its shareholders.").

Mr. Reasonover notes that he registered the mark "Malibu Tanning" with Indiana's Secretary of State in August 2000, but state registration doesn't create any ownership rights to the mark. Trademark rights are acquired by adoption and use, not by registration. *See Armstrong Paint v. Nu–Enamel Corp.*, 305 U.S. 315, 334, 59 S.Ct. 191, 83 L.Ed. 195 (1938). "State registration of a service mark does not create rights which would not otherwise exist; no substantive rights are established by registration. Thus, the senior user is the owner, even though the junior user was first to register. . . . The mere ownership of a state trademark registration does not confer trademark ownership, absent sufficient common-law usage of the mark. A state registration affords no rights to a mark that has not actually been used or which has been used and abandoned." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 22:1 (4th ed.1997). Mr. Reasonover's registration of the mark in Indiana doesn't establish his ownership of the mark.

Mr. Reasonover claims ownership of the mark based on his claim that he licensed the mark to the company and controlled the company's use of the trademark. He couldn't have licensed the mark to the company, though, because only a trademark owner can license a mark, and Mr. Reasonover didn't own the mark. *See* Siegrun D. Kane, Trademark Law § 19:1 (3d ed. 2001) ("The licensee is permitted by the licensor (trademark owner) to use the mark under certain circumstances."). Even though Mr. Reasonover may have given permission to other businesses to use the mark "Malibu Tanning," that permission didn't create his ownership rights in the mark, result in his ownership of the mark, or establish that he had ownership

rights that would permit his licensing of the mark to others.

Mr. Reasonover also relies on 15 U.S.C. § 1055 to support his claim that he acquired ownership rights in the mark based on his licensing of the mark to Malibu Tanning, Inc. and Malibu, Inc., which, he says, are "related companies" that he controlled. Section 1055 provides, in pertinent part, that when a registered mark or a mark sought to be registered "is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration." A "related company" as used in that section is defined as "any person whose use of a mark is controlled by the owner of the mark." 15 U.S.C. § 1127. Mr. Reasonover's reliance on that section is misplaced. "Malibu Tanning" is not a federally registered mark or a mark sought to be registered, and he is neither a federal registrant nor an applicant for registration. Mr. Reasonover's claim that Section 1055 is applicable to "the registrant or owner of the mark" is contradicted by the clear text of the statute, which refers to "the registrant or applicant for registration." This statutory section provides no support for his claim of ownership of the mark.

In September 1992, Malibu Tanning, Inc. opened a tanning salon in the Concord Mall under the name "Malibu Tanning." There is no dispute that Mr. Reasonover designed the "Malibu Tanning" mark, but he never personally used that mark on goods or services. Malibu Tanning, Inc., the corporation, made first use of the mark in commerce to designate the goods and services available at its tanning salon, and, as a result, has rights to the mark. *See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999) ("The party who first appropriates the mark through use, and for whom the mark serves as a designation of source,

acquires superior rights to it."). "Since priority of use is determinative, the question of who originated the mark is immaterial. Therefore, proof of an earlier conception is of no relevance.... The question of who created, or contributed to the creation of, the *goodwill* of the mark is also immaterial. Thus, the trademark and trade names used by a corporation are owned by the corporation and not by its officers, managers or agents." Rudolf Callman, THE LAW OF UNFAIR COMPETITION, TRADE-MARKS AND MONOPOLIES § 19.01, at 4 (4th ed.1981) (emphasis in original). Mr. Reasonover hasn't carried his burden of establishing that he has any protectable rights in the "Malibu Tanning" trademark for purposes of his claim of trademark infringement under the Lanham Act.

*(B) Likelihood of Confusion*

■ The third-party defendants also argue that Mr. Reasonover can't establish that their use of the mark is likely to cause confusion among customers, which is the second requirement of a claim under Section 43(a) of the Lanham Act. Mr. Reasonover maintains that there is confusion because identical marks are being used to market identical tanning services in the same geographic area. "Although likelihood of confusion is a question of fact, the issue may be resolved on summary judgment where the evidence is 'so one-sided that there can be no doubt about how the question should be answered.'" *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir.2001) (*quoting Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir.1996)). Although a "likelihood of confusion" analysis isn't necessary based on the court's determination that Mr. Reasonover hasn't carried his burden of establishing that he owns or has a legally protectable interest in the "Malibu Tanning" trademark, the court will nevertheless examine the second requirement of his § 43(a) claim.

■ The likelihood of confusion test requires examination of seven factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of defendant to 'palm off his product as that of another.'" *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043–1044 (7th Cir.2000) (*quoting Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1216 (7th Cir.1997)). Those factors provide a guide in "addressing the question of whether confusion is likely to result from the concurrent use of the marks." *Express, Inc. v. Sears, Roebuck & Co.*, 840 F.Supp. 502, 506 (S.D.Ohio 1993).

1. *Similarity of Marks.* The relevant inquiry under this factor is "whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir.1998). Mr. Reasonover says that the "signage at the former Concord Mall tanning salon" and "the Cassopolis Street tanning salon signage" make identical uses of "Malibu Tanning," but the issue to be examined is the similarity between his mark and the mark of the third-party defendants. Mr. Reasonover isn't using the "Malibu Tanning" mark, so there can be no similarity comparison. This factor weighs against a finding of likelihood of confusion.

2. *Similarity of Products.* The second factor examines the similarity of the products bearing the "Malibu Tanning" mark. Again, Mr. Reasonover isn't using the mark, so there are no similar products to

compare. This factors weighs against a finding of likelihood of confusion.

3. *Area and Manner of Concurrent Use.* The third factor assesses "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Forum Corp. of North America v. The Forum, Ltd.,* 903 F.2d 434, 442 (7th Cir.1990). There is no relationship between the goods or services of the parties since Mr. Reasonover isn't using the "Malibu Tanning" mark on any goods or services. This factor weighs against a finding of likelihood of confusion.

4. *Degree of Customer Care.* "To assess properly the degree of consumer care, the court must consider both parties' potential consumers." *CAE, Inc. v. Clean Air Engineering, Inc.,* 267 F.3d 660, 682 (7th Cir.2001). No evidence has been presented relating to this factor. While Mr. Reasonover's new company offers similar products and services, the salon doesn't use the trademark here at issue. There aren't two different companies making use of the "Malibu Tanning" mark that would cause confusion to even the most highly sophisticated tanning customer.

5. *The Strength of Mr. Reasonover's Mark.* "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Engineering, Inc.,* 267 F.3d 660, 684 (7th Cir. 2001). As discussed above, Mr. Reasonover isn't the owner of the "Malibu Tanning" mark, nor is he using the mark to identify any goods or services sold by him. This factor weighs against a finding of likelihood of confusion.

6. *Actual Confusion.* "The linchpin of both common law and federal statutory trademark infringement claims is whether consumers in the relevant market confuse the alleged infringer's mark with the complainant's mark." *AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 615 (7th Cir.1993). Mr. Reasonover submitted nine affidavits from people who each say they know Mr. Reasonover, they associate Malibu Tanning with Mr. Reasonover, and when they see the Malibu Tanning sign and logo, they think of Mr. Reasonover. One affiant added a hand-written note on her form stating that she had "tanned many times there," but because there is no evidence that any of the other nine individuals purchased or tried to purchase goods or services either from Mr. Reasonover or from the third-party defendants, they can't be considered "relevant consumers" under the Lanham Act. *See Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 637–638 (7th Cir.1999) (concluding that plaintiff failed to produce sufficient evidence of actual confusion by relevant group of consumers).

"The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427, 436 (7th Cir.1999) (*quoting Ameritech, Inc. v. American Information Technologies Corp.,* 811 F.2d 960, 964 (6th Cir. 1987)). Mr. Reasonover has shown that some people associate "Malibu Tanning" with him, but he hasn't come forth with any evidence of the likelihood of confusion among the relevant class of customers and potential customers. This factor weighs only slightly in favor of a finding of likelihood of confusion.

7. *Intent of Third–Party Defendants to "Palm Off" Their Product as That of Another.* There is no allegation or evidence that the third-party defendants intended to palm off their products and services as those of Mr. Reasonover. This factor, too,

weighs against a finding of likelihood of confusion.

Mr. Reasonover has not demonstrated genuine issues of material fact relating to the likelihood of confusion. As the claimant, Mr. Reasonover's burden is to demonstrate confusion from the dual use of competing marks. *See TMT North America, Inc. v. Magic Touch GmbH,* 124 F.3d 876, 886 (7th Cir.1997). He hasn't done so. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides two bases of liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false association"), and (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). *See* 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:14 (4th ed.1997) (discussing two prongs of Section 43(a)). Viewing the evidence in the light most favorable to Mr. Reasonover and drawing all reasonable inferences in his favor, the court concludes that he has not presented evidence from which a reasonable fact-finder could find that the third-party defendants have engaged in trademark infringement in violation of either prong of Section 43(a) of the Lanham Act. Their motion for summary judgment on this claim must be granted.

### STATE LAW CLAIMS

■ Malibu, Inc. and Vitasun, Inc. have disclaimed the trademark claims that they had raised in this action, making those claims moot and leaving the court with no federal case or controversy. The third-party defendants have moved to dismiss the remaining counts of Mr. Reasonover's counterclaim and third-party complaint, which include claims of breach of contract (Count I), breach of fiduciary duty (Counts II and III), and conversion (Count V). The third-party defendants argue that pursuant to Federal Rule of Civil Procedure 12(h)(3), the court should refuse to exercise supplemental jurisdiction under 28 U.S.C. § 1367 now that no federal claim remains. Implicitly, the same concerns affect the court's continued exercise of jurisdiction over the state law claims asserted in the counterclaims filed against Mr. Reasonover by Scott Strefling and David Hoefer and in the third-party complaint of Malibu, Inc. against Mr. Wilhelm.

In any civil action in which the court has original jurisdiction, 28 U.S.C. § 1367 provides that the court shall have "supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The court may, and generally should, relinquish supplementary jurisdiction over state law claims, however, when all federal claims are dismissed before trial. *See* 28 U.S.C. § 1367(c)(4); *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 500–502 (7th Cir.1999) (discussing general rule that when federal claims have been dismissed before trial, district court should relinquish jurisdiction over state claims); *Carr v. CIGNA Securities, Inc.,* 95 F.3d 544, 546 (7th Cir.1996) (same). That course is appropriate here.

The deadline for the completion of discovery has passed, and there appears to be no reason why further discovery would be needed in a state action. Dismissal of the state law claims will delay their resolution somewhat, but it will not require replication of preparation for trial. Disputes between Indiana citizens that are governed by Indiana law ordinarily should be heard in Indiana courts. Therefore, having granted summary judgment on Mr. Reasonover's federal claim, the court will dismiss his remaining state law claims.

### CONCLUSION

For the foregoing reasons, the court:

(1) GRANTS the motion of third-party defendants Steve Bennett, David Hoefer, Vitasun, Inc., Scott Strefling, Candice Strefling, and Malibu Properties, Inc. for summary judgment on Count IV of the supplemental amended third-party complaint [docket # 109–1];

(2) DISMISSES AS MOOT all trademark claims raised in this action by Malibu, Inc. and Vitasun, Inc.;

(3) GRANTS the motion of third-party defendants Steve Bennett, David Hoefer, Vitasun, Inc., Scott Strefling, Candice Strefling, and Malibu Properties, Inc. for dismissal of Mr. Reasonover's state law claims against them [docket # 109–2]; and

(4) DISMISSES WITHOUT PREJUDICE all other pending claims and counterclaims in this case.

The clerk shall enter judgment accordingly.

SO ORDERED.